IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SOON JA LEE,                                    )
                                                )
        Plaintiff,                              )
                                                )
        v.                                      )  Civil Action No. 1:24-cv-1353 (RDA/IDD)
                                                )
ZZIM USA, INC. d/b/a SPA WORLD,                 )
*et al.*,                                       )
                                                )
        Defendants.                             )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment (collectively, the "Motions") (Dkts. 40, 42).  This Court has dispensed with oral argument as it would not aid in the decisional process.  *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).  This matter has been fully briefed and is now ripe for disposition.  Considering the Motions together with Defendants' Memorandum in Support (Dkt. 41), the Oppositions (Dkts. 45, 46), and Replies (Dkts. 47, 48), this Court GRANTS Defendants' Motion for Summary Judgment (Dkt. 40) and DENIES Plaintiff's Motion for Partial Summary Judgment (Dkt. 42) for the reasons that follow.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed her original complaint on August 2, 2024.  Dkt. 1.  On October 9, 2024, Defendants filed an answer, which was deemed timely filed.  Dkts. 12, 15.  On January 16, 2025, Plaintiff was permitted to file an Amended Complaint.  Dkts. 27, 28.  On March 28, 2025, Defendants filed a Motion for Summary Judgment.  Dkt. 40.  The same day, Plaintiff filed a Motion for Partial Summary Judgment.  Dkt. 42.  On April 11, 2025, the parties filed their Oppositions.  Dkts. 45, 46.  On April 17, 2025, Defendants filed their Reply.  Dkt. 47.  On April 18, 2025, Plaintiff filed her Reply.  Dkt. 48.

## II.  UNDISPUTED STATEMENT OF FACTS

Before analyzing the Motions at issue here, the Court must first determine the undisputed summary judgment record, as summary judgment is only appropriate where there are no genuine disputes of material fact.  The Court has reviewed the parties' submissions and determined that the following facts are undisputed:[1]

1.  Spa World is a service establishment offering public bathhouse, spa, massage, and body scrub services.

2.  Sang Lee was the President/CEO of Spa World.  He exercised supervisory authority over Plaintiff.

3.  Chan Lee was the General Manager/Vice President of Spa World.  He exercised supervisory authority over Plaintiff.

4.  After having previously been employed by the company, Plaintiff was re-hired by Spa World as a body scrubber on or about November 30, 2021.

5.  Plaintiff worked as a body scrubber at Spa World from November 2021 to July 2024.

6.  As a body scrubber, Plaintiff provided a service to customers which included a cosmetic treatment to exfoliate the skin and remove dead skin cells, dirt, and oil.

7.  At all relevant times, Plaintiff's compensation was solely commission-based and determined by the services she provided.[2]

---

[1] The Court notes that Plaintiff failed to comply with Local Civil Rule 56(B), which requires an opposition to a motion for summary judgment "include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." Thus, Plaintiff has made it difficult for the Court to determine which facts are actually in dispute. Moreover, the Rules provide that, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Local Civil Rule 56(B).  Accordingly, the Court has reviewed Plaintiff's disputes where discernable, but otherwise Defendants' asserted facts are considered undisputed.

[2] It is of particular note that Plaintiff does not dispute this articulation of her compensation. Fed. R. Civ. P. 56(c); Local Civil Rule 56(B).  Indeed, in her own statement of facts (incorporated into her Opposition), Plaintiff repeatedly refers to her and her colleagues' "commissions" throughout.  *See, e.g.*, Dkt. 42 ¶ 17 ("Spa World did not seek any outside advice to see if their ***commission*** scheme was legal since 2021." (emphasis added)), ¶ 19 ("Scrubbers are known by

8. At all relevant times, Plaintiff's calculated rate of pay was not less than one-and-a-half times the applicable (*i.e.*, federal) minimum wage.

9. At the time of her re-hire, Plaintiff understood that she would be paid based on commission.

10. There was no written employment agreement. There was an oral agreement between Sang Lee and Plaintiff.

11. In general, Spa World agreed to pay Plaintiff 30% of what the customer paid plus all tips. There were periods of time where Spa World paid less than 30% due to budgetary constraints. On such occasions, where the price paid by the customer was increased, but the rate paid to the scrubber remained the same, Spa World held a meeting with the scrubbers to notify them of this change.[3]

12. Plaintiff was scheduled to work from 9:30AM to 9:00PM, with a one-hour lunch break.[4]

---

their nicknames, and even their ***commissions*** are calculated under nicknames." (emphasis added)), ¶ 20 ("Regardless of her performance, she was paid the same ***commission***." (emphasis added)).

[3] Plaintiff asserted that Spa World agreed to pay Plaintiff 30% of what the customer paid plus all tips. Dkt. 42 ¶ 4 (citing Dkt. 42-2 at 266:5-272:6 (Rule 30(b)(6) deposition)). Defendant disputed the fact in part, stating that it was not disputed that "in general" Spa World agreed to pay Plaintiff 30% of what the customer paid plus all tips, but providing additional asserted facts to qualify this statement. Dkt. 45 ¶ 4 (citing Dkt. 45-1 at 91:10-92:12 (Rule 30(b)(6) deposition) (describing January 2024 meeting with scrubbers notifying them of new service prices and that commission rates would remain the same), 234:3-20 (describing increases to service fees causing commission to be less than 30%)). After considering the record, the Court finds that there is no genuine dispute to the fact as amended, and the fact has been modified accordingly.

[4] Plaintiff asserted that her scheduled hours were 9:30AM to 10:00PM. Dkt. 42 ¶ 9. The record evidence she cites for this proposition states that, "Plaintiff was typically expected to arrive at 9:30 a.m. and stay until 9:00 p.m." Dkt. 42-1 at 9. Thus, the evidence she cites does not support her contention. Defendants disputed this asserted fact, citing the same and additional record evidence that her regular hours were 9:30AM to 9:00PM. Dkt. 45 ¶ 9 (citing Dkt. 45-2 at 9 ("Plaintiff was typically expected to arrive at 9:30 a.m. and stay until 9:00 p.m."); Dkt. 45-3 at 58:18-21 (Plaintiff deposition) ("Q. So, your regular workday was 9:30 in the morning until 9:00 at night with one hour for lunch; is that right? A. Yeah. That's correct.")). Based on the unanimous record evidence presented by both parties, the Court finds that there is no genuine dispute that Plaintiff was scheduled to work from 9:30AM to 9:00PM, and the fact has been modified accordingly.

13. Plaintiff generally worked 4, 5, or 6 days per week.  Plaintiff only worked 6 days per week if she specifically requested to.  And there were periods of times when Plaintiff took extended vacations.[5]

14. Plaintiff's commission earnings varied depending on the level of service she provided.

15. There were three different services provided by the scrubbers.

16. From November 2021 through December 2, 2022, Plaintiff received commission payments from Spa World in the following amounts:

   a.  For a twenty-five minute scrub, Plaintiff was paid $22.00.

   b.  For a fifty-five minute scrub special, Plaintiff was paid $41.00.

   c.  For an eighty-five minute spa special, Plaintiff was paid $57.00.

17. From December 3, 2022, through the termination of her employment, Plaintiff received commission payments from Spa World in the following amounts:

   a.  For a twenty-five minute scrub, Plaintiff was paid $26.50.

   b.  For a fifty-five minute scrub special, Plaintiff was paid $51.50.

   c.  For an eighty-five minute spa special, Plaintiff was paid $76.50.

18. Although Plaintiff could not work faster or trim minutes because services were for a set amount of time, there were ways that Plaintiff could affect her compensation.  Plaintiff could increase her income by providing quality service which resulted in receiving an additional tip from the customer in an amount of their choosing.  Plaintiff could also increase the number of customers she was able to provide services to by moving efficiently and quickly in preparing her work station between services.  And the most simple method

---

[5] Plaintiff asserted that she worked 4, 5, or 6 days per week. Dkt. 42 ¶ 10.  Defendant did not dispute that Plaintiff generally worked 4, 5, or 6 days per week, but asserted additional contextual facts. Dkt. 45 ¶ 10 (citing Dkt. 45-1 at 96:10-19 ("Q. Okay, so when [Plaintiff] was working, how many days was she working at Spa World?  A. On average, I'd say 4 to 5 days.  So at Spa World, our busiest season is actually in the wintertime.  So in the winter she might request to work five to six days on average, rather than four to five.  But we never put anyone on schedule for more than five days unless requested.  Q.  Okay, and it's your testimony that [Plaintiff] requested to be put on 6 days per week sometimes.  Is that correct?  A. Yes.  Only on her request."); Dkt. 45-4 (schedule showing Plaintiff off from February 26, 2024, to April 3, 2024)).  After considering the record, the Court finds that there is no genuine dispute to the fact as amended, and the fact has been modified accordingly.

for Plaintiff to increase her income was to take more customers throughout her working day (as demand allowed).[6]

19. Customers paid an included gratuity amount of $10, $20, or $30 depending on the service they purchased. The customers were aware that there was an included gratuity, though the customer did not necessarily know how much of the service price they were paying was designated as the included gratuity.[7]

20. The prices paid by the customers of Spa World already included the included gratuity amounts, and the customers had the option of paying extra tips on top of that.[8]

21. Plaintiff was entitled to 100% of any extra tip provided by the customer at the conclusion of the services.

22. Plaintiff received a fixed sum twice per month and the remainder of earned commissions were paid separately upon Plaintiff's request.

23. Spa World did not keep track of how many hours per week Plaintiff was working, and she was never paid any overtime pay.

24. Scrubbers are known by their nicknames, and their commissions are calculated under nicknames.

25. There were written schedules posted at Spa World ever since 2021.

---

[6] Plaintiff asserted that there was no incentive for Plaintiff to work faster or trim the minutes and that, regardless of her performance, she was paid the same commission. Dkt. 42 ¶ 20 (citing Dkt. 42-12 at 144:16-148:6 (Rule 30(b)(6) deposition)). Defendant disputed the fact by asserting additional facts about Plaintiff's incentive structure. Dkt. 45 ¶ 20 (citing Dkt. 45-1 at 97:20-98:8 (Rule 30(b)(6) deposition) (describing how scrubbers decide who takes which services), 108:3-109:1 (describing work station preparation), 180:19-181:5 (describing extra tips); Dkt. 45-3 at 77:9-14 (Plaintiff deposition) (describing extra tips)). After considering the record, the Court finds that there is no genuine dispute to the fact as amended, and the fact has been modified accordingly.

[7] Plaintiff asserted that customers were paying a mandatory tip in the amount of $10, $20, or $30 depending on the service they purchased. Dkt. 42 ¶ 5. Defendant disputed the fact only as to the use of the term "mandatory tip," describing it instead as "included gratuity" and including additional facts. Dkt. 45 ¶ 5 (citing Dkt. 45-1 at 235:7-237:5). After considering the record, the Court finds that there is no genuine dispute to the fact as amended, and the fact has been modified accordingly.

[8] Plaintiff asserted that the prices paid by the customers of Spa World already included the mandatory tip amounts, and the customers had the option of paying extra tips on top of that. Dkt. 42 ¶ 6. Defendant disputed the fact only as to the use of the term "mandatory tip." Dkt. 45 ¶ 6 (citing Dkt. 45-1 at 235:7-237:5). After considering the record, the Court finds that there is no genuine dispute to the fact as amended, and the fact has been modified accordingly.

26. There were written work schedules for Plaintiff, but all schedules from prior to September 18, 2023, are missing.[9]

27. Julie Grant was in charge of scheduling from September 2023 onward.[10]

28. Julie Grant did not erase any old schedules.

29. In 2021, Plaintiff was paid a total of $6,138.

30. In 2022, Plaintiff was paid a total of $60,058.

31. In 2023, Plaintiff was paid a total of $62,282.

32. In 2024, Plaintiff was paid a total of $46,536.50.

33. Spa World was investigated by the Wage and Hour Division of the Department of Labor ("WHD"), Case ID 1703291, from November 1, 2011, to April 6, 2014. WHD found violations. During the investigation, Spa World made adjustments to how it paid its commission-based employees and received confirmation from WHD that the adjusted commission scheme was lawful. This same commission scheme has been in use ever since.[11]

---

[9] Plaintiff asserted that all schedules from prior to November 6, 2023, are missing. Dkt. 42 ¶ 12 (citing Dkt. 42-6 at 106:7-11 ("Q. Okay, so for sure you do not have records as to the scrubbers' schedules dating prior to November 6, 2023? A. Correct. In preparation for this meeting today, we looked through all of our records, and we could not find it, unfortunately.")). Defendants disputed this fact, stating schedules are available from September 18, 2023, and attaching schedules for September 18, 2023, to December 3, 2023. Dkt. 45 ¶ 12 (citing Dkt. 45-6 (schedules)). Because it appears that schedules beginning on September 18, 2023, have been produced, the Court finds that there is no genuine dispute that schedules beginning on September 18, 2023, are available, and the fact has been modified accordingly.

[10] Plaintiff asserted only that Julie Grant was in charge of scheduling. Dkt. 42 ¶ 13 (citing Dkt. 42-6 at 101:5-6 ("Q. Okay. Now, who made these schedules? A. Julie Grant, our facility manager."); Dkt. 42-1 at 2-3 ("The schedules for our commissioned workers were created by Facility Manager Julie Grant.")). Defendants disputed this fact, stating Ms. Grant did not taking over scheduling until September of 2023. Dkt. 45 ¶ 13 (citing Dkt. 45-7 at 56:5-8 (Grant deposition) ("Q. And you started maintaining [the schedules] from either September of 2022 or September of 2023; correct? A. Yes.")). The Court finds that there is no genuine dispute that Ms. Grant was in charge of scheduling from September 2023 onward, and the fact has been modified accordingly.

[11] Plaintiff asserted that Spa World was investigated by WHD from November 1, 2011, to April 6, 2014, and they found violations. Dkt. 42 ¶ 16 (citing Dkt. 42-9 at 251:6-262:13 (Rule 30(b)(6) deposition); Dkt. 12 ¶ 7 (Answer) ("Defendants admit only that ZZIM was previously investigated by the Department of Labor. Defendants state that the investigation described in Paragraph 7 of the Complaint occurred prior to the Plaintiff's employment with ZZIM.")).

34. Spa World did not seek any outside advice to determine whether their commission scheme was legal since 2021 because Spa World had obtained confirmation from WHD that its commission scheme was compliant with the law.[12]

35. Zzim USA, Inc. and Sang K. Lee have been sued for Fair Labor Standards Act ("FLSA") violations in this Court three times. They have all settled.[13]

### III. LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

Defendant disputed this fact by asserting additional facts regarding adjustments made during the investigation. Dkt. 45 ¶ 16 (citing Dkt. 45-1 at 253:14-21 (Rule 30(b)(6) deposition) ("Q. Okay, so there's no written document from any of the attorneys who have advised you as to your payment practices. Is that correct? A. No written direction or suggestion. I went to the labor department with the lawyers, and the supervisor from the labor department told us in the conference room, this is how things should be done. And since then, we follow exactly the same direction."); *id.* at 254:8-21, 256:17-257:14). After considering the record, the Court finds that there is no genuine dispute to the fact as amended, and the fact has been modified accordingly.

[12] Plaintiff asserted that Spa World did not seek any outside advice to see if their commission scheme was legal since 2021. Dkt. 42 ¶ 17 (citing Dkt. 42-10 at 209:5-212:13 (Rule 30(b)(6) deposition) ("Q. During your tenure as a part of the management at Zzim, which apparently occurred since September of 2021, did the company seek any validation or any advice indicating that the commission scheme that the company was employing relating to the body scrubbers [was] compliant with the law? A. Since 2021, we have made no efforts to see if everything was in compliance with regards to our commission scheme. That being said, if you want to speak with Mr. Sang Lee in regards to how those commission schemes were verified in the past leading up to this, how we use it right now, then that would be in your best interest." *Id.* at 209:5-15.)). Defendants disputed this fact by asserting the additional fact that Spa World had earlier obtained confirmation from WHD that its commission scheme was compliant with the law. Dkt. 45 ¶ 17 (citing Dkt. 45-1 at 253:14-21, 254:8-21, 256:17-257:14). After considering the record, the Court finds that there is no genuine dispute to the fact as amended, and the fact has been modified accordingly.

[13] Plaintiff also asserts that the only affirmative defense Spa World disclosed in their answer to Plaintiff's interrogatories was the commissions exemption under 29 U.S.C. § 207(i), citing Defendants' answer to Plaintiff's interrogatory number 8. Dkt. 42 ¶ 21 (citing Dkt. 42-1 at 4-5). Defendants dispute this fact, citing the same interrogatory answer and their answer to the original complaint. Dkt. 45 ¶ 21 (citing Dkt. 45-2 at 5-6; Dkt. 12 at 4-6 (listing all of Defendants' affirmative defenses)). The Court finds that the citation provided by Plaintiff does not support her asserted fact, and, in any event, the asserted fact is not material. Accordingly, the asserted fact has been omitted.

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party

seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The facts shall be viewed, and all reasonable inferences

drawn, in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255.  "(A) party

opposing summary judgment may not simply rest on the allegations of his complaint, but must

instead come forward with specific evidence showing the existence of a genuine issue of fact."

*Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952

F.2d 820, 823 (4th Cir. 1991)).  When faced with cross-motions for summary judgment, a court

must review each motion separately on its own merits to determine whether either of the parties

deserves judgment as a matter of law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)

(quotations omitted).

## IV.  ANALYSIS

In her Amended Complaint, Plaintiff asserts one count for a violation of the FLSA overtime

provisions.[14]  *See* Dkt. 28 ¶ 42 ("Defendants were engaged in illegal practice in violation of the

---

[14] The Court notes that, despite Plaintiff being represented by counsel, Plaintiff's Amended Complaint does not identify any specific counts, and her precise claim is somewhat difficult to ascertain.  In addition to her claim regarding failure to pay overtime, Plaintiff also appears to assert a failure to pay "regular wages" under the FLSA.  However, it is undisputed that Plaintiff was paid more than the federal minimum wage.  And failure to pay regular wages alone is not a violation of the FLSA.  *See* 29 U.S.C. § 215; *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1282 (4th Cir. 1996) (holding that claims for regular wages are not cognizable under the FLSA "when the employer has not violated the FLSA's minimum wage/maximum hour provisions"); *id.* at 1265 ("[W]e disagree with the lower court that the FLSA is the proper vehicle to pursue back pay for straight time in pay cycles in which an employee has worked no overtime and has been paid at least minimum wage for all hours worked."); *Gregory v. FedEx Ground Package Sys., Inc.*, 2012 WL 2396873, at *7 (E.D. Va. May 9, 2012) ("[A]n employer violates the FLSA only when an employee's compensation for the week falls below the statutory minimum when that minimum is multiplied by the number of hours the employee worked."), *report and recommendation adopted sub nom. Gregory v. Fedex Ground Packaging Sys. Inc.*, 2012 WL 2396861 (E.D. Va. June 25, 2012).  Additionally, to the extent Plaintiff also asserts a violation of the FLSA's recordkeeping provisions, no private right of action exists.  *See Iglesias v. Wal-Mart Stores E., L.P.*, 2009 WL 8760729, at *3 (E.D. Va. Oct. 26, 2009) ("[T]he FLSA creates no private cause of action for

FLSA by failing to pay the overtime pay to Plaintiff.").  The parties each filed cross-motions for

summary judgment.  In the cross-motions, all parties seek, at least in part, judgment on the issue

of whether Plaintiff is exempted from the FLSA's overtime provisions as an employee whose pay

is based on a *bona fide* commission scheme.  Indeed, the parties incorporate by reference their

arguments in the filings on Plaintiff's motion into their arguments on Defendants' motion.  *See*

Dkt. 47 at 4 n.2.  Because the Court finds that Plaintiff is exempted from the FLSA's overtime

provisions, Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Motion for

Partial Summary Judgment will be denied.

### A.  Defendants' Motion for Summary Judgment

As relevant here, "the FLSA requires employers to pay overtime to covered employees

who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 81

(2018) (citing 29 U.S.C. § 207(a)).  Employers asserting an FLSA exemption bear the burden to

"prove the application of the exemption by clear and convincing evidence." *Calderon v. GEICO*

*Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015).  In their motion, Defendants argue that Plaintiff

is exempted from the FLSA's overtime provisions under 29 U.S.C. § 207(i), which states:

> No employer shall be deemed to have violated subsection (a) by employing any
> employee of a retail or service establishment for a workweek in excess of the
> applicable workweek specified therein, if (1) the regular rate of pay of such
> employee is in excess of one and one-half times the minimum hourly rate applicable
> to him under section 206 of this title, and (2) more than half his compensation for
> a representative period (not less than one month) represents commissions on goods
> or services. In determining the proportion of compensation representing
> commissions, all earnings resulting from the application of a bona fide commission
> rate shall be deemed commissions on goods or services without regard to whether
> the computed commissions exceed the draw or guarantee.

---

enforcement of these record-keeping requirements."), *aff'd*, 375 F. App'x 364 (4th Cir. 2010); *see*
*also Frechette v. Blue Ridge Hospice*, 2024 WL 4775101, at *5 (W.D. Va. Nov. 13, 2024)
(collecting cases).  Accordingly, the Court construes the Amended Complaint as stating one count
for violation of the FLSA overtime provisions.

As the Fourth Circuit has noted, "[r]egrettably, neither the FLSA nor its regulations define a 'commission.'" *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1034 (4th Cir. 2020) (providing a preliminary analysis on whether automatic gratuities at a restaurant qualify as commissions and remanding to the district court). The Fourth Circuit has previously found the "best guidance" to be 29 C.F.R. § 779.414. *Id.* That provision discusses the types of employees paid by commission:

> These employees are generally employed in so-called "big ticket" departments and those establishments or parts of establishments where commission methods of payment traditionally have been used, typically those dealing in furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders.

*Id.* (quoting 29 C.F.R. § 779.414). "This is a non-exhaustive list, as '[t]here may be other segments in retailing where the proportionate amount of commission payments would be great enough for employees employed in such segments to come within the exemption.'" *Id.* In addressing the issue, the Fourth Circuit also noted in a footnote that "*Black's Law Dictionary* defines a commission as '[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction.'" *Id.* at 1034 n.3 (quoting *Commission*, Black's Law Dictionary (11th ed. 2019)).

Here, it is undisputed that Spa World qualifies as a service establishment under the FLSA. *See* 29 C.F.R. § 779.318. Additionally, it is undisputed that Plaintiff's regular rate of pay was more than one and one-half times the federal minimum wage of $7.25 per hour. And it is undisputed that more than half of Plaintiff's compensation comprised a percentage of what the customer paid for each service Plaintiff provided. Accordingly, it appears that Plaintiff is clearly exempted from the FLSA overtime provisions. *See Herrera v. TBC Corp.*, 18 F. Supp. 3d 739, 747 (E.D. Va. 2014) (holding that the commission exemption applied where "ultimately the

employee's salary is the equivalent of a portion of the customer's bill"); *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 508 (7th Cir. 2007) ("The essence of a commission is that it bases compensation on sales, for example a percentage of the sales price . . . .").

The core of the dispute between the parties is whether the commission scheme at issue here qualifies as a "*bona fide*" commission scheme under the FLSA. Specifically, in her motion, incorporated by reference into her opposition brief, Plaintiff argues that her compensation was not a *bona fide* commission scheme because it was not "decoupled" from the actual time she worked such that her compensation could not be increased by working more efficiently.[15] Dkt. 42 at 8. In support of her argument, Plaintiff cites several out-of-Circuit cases identifying common characteristics of commission-based schemes to determine whether various complex compensation arrangements were exempted under the FLSA. *See id.* at 8-11.

As a preliminary matter, even Plaintiff here admits her compensation was a commission scheme in its most basic form—payment based on a percentage of the fee charged to the customer. Dkt. 45-3 at 15:9-20 (Plaintiff deposition) ("It is a basic, guaranteed commission."). Accordingly, her case lies at the heart of the exemption, not around its edges, and the cases she cites are readily distinguishable on that ground.

---

[15] Plaintiff also makes a passing argument in her Opposition brief—without any citations to relevant authority or the record (although the Court understands the factual support to come from the attached declaration from Plaintiff)—that the commission scheme was not *bona fide* because she received basically the same amounts every two weeks (which the Court understands to describe her "draw" or "guarantee," a common feature of commission-based systems) and received extra payments only after begging for them. Dkt. 46 at 3. Plaintiff also argues that the Court should construe the FLSA to apply due to other "oppressive and brutal" work conditions unrelated to pay. Dkt. 46 at 2. Although the Court is troubled by these allegations, and notes that Plaintiff should not be required to beg for her payments in excess of the draw, these do not change the Court's analysis on the core issue of whether the payment scheme itself was ultimately commission-based such that it is excluded from the FLSA overtime provisions.

Moreover, all of the Courts of Appeals cases cited by Plaintiff concluded that, despite the variance of the different schemes from the basic idea of commission, each one ultimately did qualify as *bona fide* commissions. *See Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 509-11 (7th Cir. 2007) (holding a system in which mechanics are paid by multiplying the expected hours for a job by their individual rate is a *bona fide* commission system because compensation is based on sales); *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 283 (3d Cir. 2010) (holding a system in which sales associates are paid a flat rate per sale is a *bona fide* commission scheme where payments were sufficiently proportional to the cost to the consumer, the plan bases compensation on sales, and the overall system was reasonable and did not offend the purposes of the FLSA); *Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 369 (7th Cir. 2015) (holding a system in which window washers are paid based on the estimated hours for a job multiplied by their individual rate is a *bona fide* commission system where varying customer demand, weather, and falcon attacks meant they could not count on providing 40 hours of services each week for an entire year). And the two out-of-Circuit district court cases relied upon by Plaintiff that did not so conclude relied on a principle expressly rejected by the U.S. Supreme Court in 2018, that exemptions to the FLSA should be construed narrowly, and thus the cases have minimal persuasive value. *Contrast Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88-89 (2018) ("The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. We reject this principle as a useful guidepost for interpreting the FLSA."), *with Almanzar v. C & I Assocs., Inc.*, 175 F. Supp. 3d 270, 274 (S.D.N.Y. 2016) ("Moreover, because the FLSA is a remedial act, the exemption is to be 'narrowly construed.'" (citation omitted)), *and Casanova v. Gold's Texas Holdings Grp., Inc.*, 2016 WL 1241548, at *9 (W.D. Tex. Mar. 23, 2016) ("Accordingly, upon considering the characteristics of a bona fide commission and construing the

exemption narrowly as the Court must, the Court finds as a matter of law that Gold's Gym's

compensation system for trainers is not a bona fide commission.").

 Moreover, even if the Court were to adopt Plaintiff's analytical framework, the record in

this case shows that her compensation in this case was sufficiently "decoupled" from the amount

of time she worked to qualify as a *bona fide* commission scheme.  In *Yi*, the opinion from which

the idea of commissions being "decoupled" appears to have arisen, the Seventh Circuit explained

the commission exemption as follows:

> The essence of a commission is that it bases compensation on sales, for example a
> percentage of the sales price, as when a real estate broker receives as his
> compensation a percentage of the price at which the property he brokers is sold.
> Although his income is likely to be influenced by the number of hours a week that
> he works, the relation is unlikely to be a regular one.  In one week business may be
> slow; he may make no sales and thus have no income for that week.  The next week
> business may pick up and by working overtime that week he may be able to make
> up the income he lost because of slack business the previous week.  Over a year his
> hours of work may be similar to those of regular hourly employees.  So if he had to
> be paid overtime, his annual income would be higher than theirs even though he
> hadn't worked more hours over the course of the year than they had.  We take this
> to be the rationale for the commission exemption from the FLSA's overtime
> provision.

*Yi*, 480 F.3d at 508.  In applying this concept to the specific facts of that case (involving mechanics

at an auto repair shop), Judge Posner then noted:

> The faster the team works, the more it earns per number of hours, since its
> commission is based not on the total number of hours it puts on a job but on the
> number of booked hours [the number of hours normally required to do a given type
> of repair] times each member's booked-hour rate.  That is how commissions work;
> they are decoupled from actual time worked.  The percentage rate is implicit in
> Sterling's method of compensation.  It is equivalent to paying the team a percentage
> . . . of the labor component of the price of their service to the customer.

*Id.* at 509.

 Here, no complex formula is needed to determine that Plaintiff's compensation was

"equivalent" to paying a percentage of the price of the service charged to the customer—Plaintiff

concedes that is simply what Plaintiff was paid (plus tips). *See* Dkt. 42 ¶ 4 ("Spa World agreed to pay Soon Ja 30% of what the customer paid plus all tips."); Dkt. 45-3 at 15:9-20 (Plaintiff deposition) ("It is a basic, guaranteed commission.").    Moreover, it is undisputed that, although Plaintiff's working hours were from 9:30 a.m. to 9:00 p.m., with a one-hour lunch break, Plaintiff's compensation varied each day depending on the number of each of the three types of services that customers requested and that she agreed to provide.  On a slow day, Plaintiff could be at work the entire day and perform no services and thus make no income.  On a busy day, Plaintiff could fill her entire day with services and make up the income lost from the slow day.  Indeed, Plaintiff could even perform roughly the same number of hours of services on two different days but earn different amounts due to the varying prices for the different services:  The record shows that twenty-five minute scrubs were more expensive per minute than fifty-five minute scrubs, which in turn were more expensive per minute than eighty-five minute scrubs.  So, if there was sufficient customer demand, Plaintiff could make more money performing three twenty-five minute scrubs (3 x $26.50 = $79.50) than one eighty-five minute scrub (1 x $76.50 = $76.50).  And, although Plaintiff could not complete a twenty-five minute scrub in less than twenty-five minutes, the nature of the commission-based compensation structure overall would objectively incentivize Plaintiff to transition from one customer to the next in an efficient manner to maximize the number of services she could complete during her working hours.  Thus, like the Seventh Circuit's hypothetical real estate agent, although Plaintiff's compensation is likely to have been influenced by the number of hours she worked, the relationship was an irregular one. *See also Reed v. Brex, Inc.*, 8 F.4th 569, 576 (7th Cir. 2021) ("Brex's admissions that technician pay is partially a function of hours worked do not create a triable issue of fact. Obviously, to some extent, technicians who work more hours are likely to have more repair opportunities and therefore make more money."); *cf. Alvarado*, 782

14

F.3d at 368 ("An employee who is paid by the sale is not a commission worker if his sales are made at a uniform rate (e.g., one sale per hour), so that the ratio of his hours worked to his pay is constant.  For in that case his pay is effectively hourly.").

Plaintiff's assertion that she was actually paid through a piece-rate system further confirms that the opposite is true.  *See* Dkt. 42 at 10.  As the Seventh Circuit explained in the very case cited by Plaintiff for this proposition,

> In a piece-rate system a worker is paid by the item produced by him: so much per scarf, for example, if his job is to make scarves.  In a commission system he is paid by the sale—so if he works for a shoe store he's paid a specified amount per pair of shoes that he sells.  Thus the scarf worker is paid for making scarves even if they haven't been sold—that is, even if he's producing for inventory—while the shoe salesman is paid only when he makes a sale.  In the present case, as in the shoe-store example, the window washers are paid only if there's been a sale, namely a sale of window-washing service to a building owner or manager.

*Alvarado*, 782 F.3d at 367.  As with shoe salesmen and window washers, so too with body scrubbers—the body scrubbers are paid only if there's been a sale, namely a sale of body-scrubbing service to a spa customer.

Thus, the Court finds that under a fair, plain reading of the statute, Defendants have shown by clear and convincing evidence that the commission exemption applies.  *See Herrera*, 18 F. Supp. 3d at 747 (holding that the commission exemption applied where "ultimately the employee's salary is the equivalent of a portion of the customer's bill"); *Yi*, 480 F.3d at 508 ("The essence of a commission is that it bases compensation on sales, for example a percentage of the sales price . . . .").  Accordingly, summary judgment will be granted to Defendants on this basis.

B.  Plaintiff's Motion for Partial Summary Judgment

In her Motion for Partial Summary Judgment, Plaintiff seeks summary judgment on the following issues: "(1) that Spa World'[s] affirmative defense of commissions exemption under 29 U.S.C. §207(i) does not apply in this action[;] (2) that [Plaintiff] worked overtime hours[;] (3) that

Spa World did not pay overtime wages[;] (4) that Spa World willfully violated the FLSA[;] and

(5) that Spa World failed to maintain proper records." Dkt. 42 at 3.  As the Court previously noted,

the parties incorporated by reference their arguments as to the first issue into their pleadings on

Defendants' Motion for Summary Judgment.  Accordingly, Plaintiff's motion will be denied on

the first issue for the same reasons explained *supra*.  And, because the Court has granted summary

judgment for Defendants and against Plaintiff on this issue, the remaining issues in Plaintiff's

motion are moot.  Accordingly, Plaintiff's Motion for Partial Summary Judgment will be denied.

## VI.  CONCLUSION

Accordingly, it is hereby ORDERED that Defendants' Motion for Summary Judgment

(Dkt. 40) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (Dkt. 42) is

DENIED; and it is

FURTHER ORDERED that Defendants' Motion to Dismiss the Amended Complaint (Dkt.

32) is DENIED AS MOOT; and it is

FURTHER ORDERED that Plaintiff's Motion to Amend/Correct (Dkt. 37) is DENIED

AS MOOT;[16] and it is

---

[16] Plaintiff seeks to again amend her complaint only to "properly reflect the varying service prices charged to the end customers of Zzim USA, Inc. over the years and the payments made by the defendants."  Dkt. 37 ¶ 4.  "In particular, the regular hourly rate decreased to $30.93 from $38.37 and the payments made by the defendants increased to $171,478.00 from $157,373.00.  As a result, the total backpay amount sought by the plaintiff (before liquidated damages) is reduced to $32,853.50 from $88,033.00."  *Id.* ¶ 5.  Accordingly, permitting further amendment would not address the core deficiency in Plaintiff's theory of the case, and would thus be futile.

FURTHER ORDERED that the Clerk of Court is DIRECTED to enter Rule 58 judgment against Plaintiff Soon Ja Lee and in favor of Defendants Sang K. Lee, Zzim USA, Inc., and Chan Hee Edward Lee and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
March 12, 2026

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge